RENDERED:  JULY 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1081-MR

OLLIN DRIGGERS                                      APPELLANT

           APPEAL FROM GREENUP CIRCUIT COURT
v.       HONORABLE BRIAN CHRISTOPHER MCCLOUD, JUDGE
           ACTION NO. 25-CR-00021

COMMONWEALTH OF KENTUCKY                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, A. JONES, AND L. JONES, JUDGES.

CETRULO, JUDGE:  Ollin Driggers ("Driggers") appeals from a Greenup Circuit Court judgment sentencing him to six years of imprisonment on a conditional guilty plea, pursuant to RCr[1] 8.09, to several counts of trafficking in a controlled substance.  Under the conditional guilty plea, Driggers preserved his right to

---

[1] Kentucky Rule of Criminal Procedure.

appeal the denial of his motion to suppress evidence seized by police during an investigatory stop. After review, we affirm.

## BACKGROUND

On October 27, 2020, Driggers was arrested and charged with multiple counts of trafficking in controlled substances. Shortly after midnight on October 27, Officer Jason Stamper conducted a stop of Driggers's car. The stop occurred moments after officers with the Greenup County Sheriff's Department utilized a confidential informant to conduct a controlled buy for methamphetamine from Driggers at 1314 State Route 2070 in Greenup, Kentucky. After a drug dog alerted to the presence of narcotics inside the car, officers conducted a search and recovered various quantities of suspected controlled substances, including methamphetamine, heroin, fentanyl, marijuana, LSD,[2] and 66 unidentified pills. The officers also recovered $1,240 of U.S. Currency, $80 of which was identified as the money given to the confidential informant for the controlled buy.

On February 6, 2025, the Greenup County grand jury indicted Driggers on five counts of trafficking in a controlled substance under KRS[3]

---

[2] Lysergic acid diethylamide.

[3] Kentucky Revised Statute.

218A.1421.[4]  Driggers filed a motion to suppress all evidence discovered during the search.  The circuit court held an evidentiary hearing on July 17, 2025.

At the hearing, the Commonwealth called Officer Stamper as its only witness.  Officer Stamper testified that on October 27, 2020, he was employed with the Greenup County Sheriff's Department and assisted with the controlled buy.  According to Officer Stamper's testimony, on the night of October 26-27, the sheriff and another officer accompanied the confidential informant to a third-party's house to purchase methamphetamine from Driggers.

Meanwhile, Officer Stamper parked at a nearby intersection where he waited for Driggers to leave the residence after the controlled buy.  Officer Stamper testified that the plan was to begin following Driggers once he reached the intersection and conduct a stop upon observing a traffic violation.  However, either before or right as Driggers reached the intersection, his car pulled off the roadway and parked on the property of a gas plant.

Officer Stamper testified that he found this conduct suspicious, particularly after the terrorist attacks on September 11, and stated "any time you go someplace like that, you never know what's going on."  Officer Stamper conducted

---

[4] The indictment contained the following counts:  (1) trafficking in greater or equal to two grams of methamphetamine, first degree, second or greater offense; (2) trafficking in fentanyl, first degree; (3) trafficking in heroin, first degree; (4) trafficking in an unspecified controlled substance in an amount greater or equal to 20 dosage units, third degree, second or greater offense; and (5) trafficking in greater or equal to two grams methamphetamine, first degree, first offense.

a stop and spoke to Driggers and the woman who was with him. They informed Officer Stamper that one of them spilled food inside the car and that was the reason for pulling over at the gas plant. After this initial contact, Officer Stamper testified that the sheriff and another officer arrived on scene and took over the investigation. The officers requested canine assistance.

Officer Stamper testified that in 2020, the county had one drug dog, which was based out of the Raceland Police Department. While he was uncertain exactly when the canine arrived, he acknowledged that "it was a long time." He further acknowledged that the citation indicated a violation time of 1:00 a.m. and an arrest time of 3:00 a.m., and that the canine arrived at some point during that timeframe. After the canine unit arrived on scene, Officer Stamper testified that the officers searched Driggers's car and retrieved "an amount of four or five different drugs in there."

Upon further questioning by the circuit court, Officer Stamper clarified that the confidential informant confirmed the purchase of drugs from Driggers and that the controlled buy had occurred just moments before the stop. After the transaction, the sheriff, who was driving an unmarked vehicle, picked up the informant and followed Driggers for approximately two miles before he stopped at the gas plant. The sheriff witnessed Driggers pull over and notified Officer Stamper to initiate the stop. From the time Driggers left the controlled buy

until the stop, Officer Stamper confirmed that the sheriff had "eyes on him" the entire time.

The court heard arguments at the conclusion of Officer Stamper's testimony. Defense counsel argued that if the officers had probable cause based on the controlled buy, then there was no need to wait two hours for the drug dog. The Commonwealth responded that the officers had at least reasonable suspicion of criminal activity to justify the delay. The court took the matter under submission.

On July 24, 2025, the circuit court entered its written order detailing its findings of fact and legal conclusions. The court found that the officers had both reasonable suspicion to extend the *Terry*[5] stop and probable cause for the seizure, noting that a drug trafficking investigation was already underway when Driggers stopped. Accordingly, the court denied Driggers's motion to suppress the evidence. Shortly thereafter, Driggers entered a conditional guilty plea to three counts of trafficking in a controlled substance, and the court sentenced him to a cumulative sentence of six years of imprisonment in accordance with the plea agreement.[6] This appeal followed.

---

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

[6] Under the plea agreement, the Commonwealth dismissed counts one and two in exchange for Driggers's guilty plea to six years to serve on count three (trafficking in heroin, first degree), five years to serve on count four (trafficking in an unspecified controlled substance in an amount greater or equal to 20 dosage units, third degree, second or greater offense), and six years to serve on count five (trafficking in greater or equal to two grams methamphetamine, first degree, first offense); all counts were to run concurrently for a total sentence of six years.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed by this Court using a two-pronged analysis. *Turley v. Commonwealth*, 399 S.W.3d 412, 417 (Ky. 2013) (citing RCr 9.78). First, the trial court's factual findings are reviewed for clear error, which are affirmed if supported by substantial evidence. *Id.* (citing RCr 9.78; *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002)). "A finding of fact is clearly erroneous if it is not supported by substantial evidence; that is, evidence sufficient to induce conviction in the mind of a reasonable person." *Id.* at 418 (citing *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)).

"Second, if the court's findings of fact are supported by substantial evidence, we then conduct a *de novo* review of the court's application of the law to the facts." *Id.* at 417 (citing *Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010)).

## ANALYSIS

On appeal, Driggers first argues that the circuit court's factual findings are clearly erroneous, and in particular, he asserts that the court incorporated facts that were not introduced at the suppression hearing but were alleged in a KYIBRS[7] report filed in the court record as part of the

---

[7] Kentucky Incident Based Reporting System.

Commonwealth's discovery response. For instance, Driggers takes issue with the court's finding that "[t]he police 'had eyes' at the sale through the confidential informant, who immediately reported the deal and the Defendant to the sheriffs." Driggers contends that there was no testimony that the confidential informant confirmed purchasing drugs and that "Officer Stamper merely speculated that [the controlled buy] occurred because he was called by a sheriff in an unmarked vehicle to stop [Driggers] at the gas plant." However, the record of the suppression hearing refutes this claim.

During the court's questioning of Officer Stamper, the court inquired a) how Driggers was involved in the buy; b) whether the confidential informant actually bought drugs at the residence; c) who retrieved the confidential informant after the transaction concluded; and d) what was the timing of the controlled buy with Driggers leaving the residence and pulling off the road at the gas plant. In answering these questions, Officer Stamper provided testimony that Driggers sold drugs to the confidential informant, who then joined the sheriff in the unmarked car and confirmed the transaction. Right after the controlled buy, Driggers left the residence and remained under the sheriff's constant surveillance until stopping at the gas plant property.

Driggers likewise claims that the circuit court relied on the KYIBRS report, as opposed to hearing testimony, to make the finding that "[u]pon

approaching the vehicle, the Defendant denied the sheriff's permission to search the vehicle. However, upon approach, items related to drug use, specifically Narcan and needles, were in plain view to the officers." The Commonwealth relies on our Supreme Court's opinion in *Commonwealth v. Priddy*, 184 S.W.3d 501, 504-07 (Ky. 2005), which reversed this Court's holding that the trial court improperly relied on a citation not admitted into evidence at the suppression hearing, and therefore, its factual findings were not supported by substantial evidence. *Id.* at 506. As noted by our Supreme Court, "[w]hat this argument overlooks though, is that the citation *was used* by the parties during the hearing, as well as, having then been reviewed by the court from its record." *Id.* at 506.

The Court held that "KRE[8] 104(a) provides 'preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . . In making its determination it is not bound by the rules of evidence, except those with respect to privileges.'" *Id.* The Court further noted that "RCr 8.22 also provides that 'pretrial motions raising defenses or objections shall be determined before trial . . . . All other issues of fact shall be determined by the court with, or without, a jury, *or on affidavits, or in such other manner as the court may direct*.'" *Id.* While our Supreme Court noted the "better procedure" would be "to create a record of 'exhibits' in an RCr 8.22 hearing," it acknowledged that there was no

---

[8] Kentucky Rule of Evidence.

rule to compel courts or parties to do so. *Id.* at 507.[9] Finally, and key to our decision in the matter before us, the defense counsel in *Priddy* used the citation during cross-examination to try to impeach the officer's testimony and did not object to the trial court's reference to and incorporation of facts from the citation in its ruling. *Id.* at 507.

Driggers's counsel likewise used the report several times in his cross-examination of Officer Stamper, and in fact, was the first party to bring it up in the hearing. As in *Priddy*, Driggers relied upon the citation and at no point objected to its use by the circuit court or Commonwealth. "It has long been the law of this Commonwealth that an error would not be reviewed on appeal if the trial court has not had an opportunity to rule on the objection. . . ." *Id.* (quoting *Commonwealth v. Petrey*, 945 S.W.2d 417, 419 (Ky. 1997)).

We next turn to the court's application of the law to the facts. To this end, Driggers argues that the circuit court misapplied the law to the facts and asserts Officer Stamper lacked probable cause and reasonable suspicion to conduct a stop. In the alternative, Driggers claims that even if the initial stop was lawful, it was impermissibly prolonged to facilitate a canine sniff search.

---

[9] We agree with this "better procedure" and note that our review would have been significantly aided had the circuit court created a clearer and more thorough record. The fact remains that there is no rule to compel such a record today.

"There are three types of interaction between police and citizens: consensual encounters, temporary detentions generally referred to as *Terry* stops, and arrests." *Baltimore v. Commonwealth*, 119 S.W.3d 532, 537 (Ky. App. 2003) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The protection against unreasonable searches and seizures provided by the Fourth Amendment to the United States Constitution applies to *Terry* stops and arrests. *Id.*; *see also Commonwealth v. Reed*, 647 S.W.3d 237, 243 (Ky. 2022) (citations omitted) (observing that there is "no substantial difference" between Section 10 of the Kentucky Constitution and the Fourth Amendment; therefore, Kentucky courts are guided by federal interpretation and application of the Fourth Amendment).

In general, the Fourth Amendment requires the seizure of an individual to be supported by probable cause. *Baltimore*, 119 S.W.3d at 537 (citing *Dunaway v. New York*, 442 U.S. 200, 208 (1979); *United States v. Saperstein*, 723 F.2d 1221, 1229 (6th Cir. 1983)). "Probable cause involves whether the known facts provide reasonable grounds or a fair probability that a circumstance exists supported by less than prima facie proof but more than mere suspicion." *Id.* at 538 (citations omitted). An arrest is supported by probable cause when the officer has "reasonable grounds for the belief that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 539 (citations omitted).

A *Terry* stop, or an investigatory stop, is not as intrusive as a formal arrest and accordingly may be justified by suspicion less than probable cause: "Police may conduct an investigatory stop if they have 'reasonable suspicion based upon objective, articulable facts that criminal activity is afoot' considering the totality of the circumstances." *Williams v. Commonwealth*, 364 S.W.3d 65, 69 (Ky. 2011) (first quoting *Strange v. Commonwealth*, 269 S.W.3d 847, 850 (Ky. 2008); and then citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "Both the reasonable suspicion and probable cause objective standards are flexible concepts to be applied in a commonsense manner based on the totality of the circumstances in each case." *Baltimore*, 119 S.W.3d at 539 (citations omitted). Moreover, these standards may be established through the collective knowledge doctrine.[10]

In the case before us, Officer Stamper had both probable cause and reasonable suspicion to stop Driggers. The facts and circumstances known to Officer Stamper, relayed to him by the sheriff, support the finding that he had

---

[10] In *Lamb v. Commonwealth*, our Supreme Court held that an officer need not establish probable cause to arrest based on his own observations: "Under the collective knowledge doctrine, an arresting officer is entitled to act on the strength of the knowledge communicated from a fellow officer and he may assume its reliability provided he is not otherwise aware of circumstances sufficient to materially impeach the information received." 510 S.W.3d 316, 323 (Ky. 2017) (citing *United States v. Hensley*, 469 U.S. 221, 232-33 (1985); *Darden v. Commonwealth*, 298 S.W.2d 687, 689 (Ky. 1957)). Our Supreme Court likewise observed that the collective knowledge doctrine may be considered when determining the existence of reasonable suspicion. *Commonwealth v. Blake*, 540 S.W.3d 369, 373 (Ky. 2018) (citations omitted).

information that Driggers just sold drugs to the confidential informant at a residence approximately two miles from the stop. At the very least, Officer Stamper had reasonable suspicion to believe that criminal activity was afoot. Officer Stamper was assisting with the sheriff's drug trafficking investigation on the night of October 26-27, and the fact that Driggers immediately left the scene of the controlled buy supports a reasonable suspicion that Driggers could have drugs and other evidence of trafficking on or about his person.

Finally, we hold that the stop was not unreasonably prolonged in this case. In *Commonwealth v. Bucalo*, our Supreme Court stated the test for determining the reasonableness of the length of detention to be "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly[.]" 422 S.W.3d 253, 260 (Ky. 2013) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). Again, our review would have benefitted from a more specific and detailed record. Nevertheless, this case did not involve a traffic stop wherein the focus is on whether "an officer pursues purposes or tasks unrelated to his or her main objective of addressing a traffic violation *and* that new pursuit adds time to the stop." *Commonwealth v. Clayborne*, 635 S.W.3d 818, 824 (Ky. 2021) (citing *Carlisle v. Commonwealth*, 601 S.W.3d 168, 176 (Ky. 2020)). The main objective of the Greenup Sheriff's Department on October 27, 2020, was the drug trafficking investigation following a very recent controlled buy,

not completing tasks associated with a traffic infraction. Under the totality of circumstances in this case, we cannot say the detention of Driggers was unreasonably prolonged.

## CONCLUSION

For the foregoing reasons, we AFFIRM the order of the Greenup Circuit Court denying Driggers's motion to suppress evidence.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jennifer E. Hubbard
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

James Havey
Assistant Solicitor General
Frankfort, Kentucky